UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL HORACEK

        Plaintiff,

                                CASE NO. 04-CV-73929-DT
                                JUDGE DENISE PAGE HOOD
                                MAGISTRATE JUDGE PAUL KOMIVES

  v.

JILL EBERLY, LYNNE ADAMS,
WILLIAM STIVERSON and SAL AHMED;

        Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS'
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (Doc. Ent. 18)**

Table of Contents

I.     RECOMMENDATION ................................................................. 2

II.    REPORT ........................................................................... 2
    A.     Background and Procedural History ................................................ 2
         1.    The complaint ...................................................... 2
         2.    Defendants' motion to dismiss or for summary judgment ..................... 3
    B.     Applicable Law ................................................................ 4
         1.    Fed. R. Civ. P. 12 ("Defenses and Objections") ............................... 4
         2.    Fed. R. Civ. P. 56 ("Summary Judgment") .................................. 6
         3.    28 U.S.C. § 1915 ("Proceedings in forma pauperis") .......................... 8
    C.     Analysis ...................................................................... 8
         1.    Plaintiff has exhausted his administrative remedies as to his legal mail claims. ....... 8
         2.    Plaintiff's claims are not barred by the doctrines of res judicata and collateral estoppel.
                ................................................................. 16
         3.    The Eleventh Amendment bars portions of plaintiff's claims. ................... 18
         4.    MDOC PD 05.03.118 (Dec. 19, 2003) ¶ EE is unconstitutional under *Turner*. ...... 19
         5.    Plaintiff has not stated a Sixth Amendment claim upon which relief may be granted. .. 27
         6.    Plaintiff's access to courts claim does not survive summary judgment. ............ 29
         7.    Defendants Adams, Ahmed, and Stiverson were not personally involved. .......... 32
         8.    Defendant Eberly is entitled to qualified immunity on plaintiff's claim that she opened his
               legal mail pursuant to an unconstitutional mail policy ......................... 36
         9.    Plaintiff's request for injunctive relief is moot. ............................... 40

III.   NOTICE TO PARTIES REGARDING OBJECTIONS: ...................................... 41

1

I.    **RECOMMENDATION:**

For the reasons noted below, the Court should grant defendants' motion to dismiss or for summary judgment.  (Doc. Ent. 18).

II.    **REPORT:**

A.    **Background and Procedural History**

1.    **The complaint**

On October 4, 2004, plaintiff filed a pro se, in forma pauperis[1] prisoner civil rights complaint. (Doc. Ent. 3 [Compl.]).[2]  He names as defendants Jill Eberly, Parnall Correctional Facility (SMT) mailroom employee; Lynne Adams, SMT mailroom employee; William Stiverson, SMT employee; and Sal Ahmed, SMT mailroom supervisor.  Compl. at 1, 5.  Among the forms of relief plaintiff seeks are declaratory judgments, injunctions, compensatory damages, punitive damages, costs and fees related to this suit, and any other relief to which he is entitled. Compl. at 11.[3]

The complaint contains three causes of action: (1) violation of plaintiff's First Amendment right to receive legal mail; (2) violation of his Sixth Amendment right to the attorney/client privilege; and (3) violation of his Fourteenth Amendment due process right to

_____

[1]On October 8, 2004, I entered an order waiving prepayment of the filing fee and directing payment of the initial partial filing fee and subsequent payments.  (Doc. Ent. 2).

[2]Plaintiff was paroled on November 18, 2004.  *See* www.michgian.gov/corrections, "Offender Search".

[3]The address on plaintiff's complaint is Parnall Correctional Facility, 1790 E. Parnall Road, Jackson, Michigan 49201.  On November 24, 2004, plaintiff informed the Court that his address had changed to P.O. Box 343, Lake Orion, Michigan 48361.  (Doc. Ent. 7).  This is reflected on the Court's docket.

access courts.[4]   Compl. at 6.   Plaintiff alleges that these constitutional rights were violated when defendants "knowingly and willingly open[ed] said mail outside the presence of the Plaintiff, and, prior to February 4, 2004, without the Plaintiff signing for receipt of said mail."  Compl. at 8. ¶1.[5]

## 2.    Defendants' motion to dismiss or for summary judgment

On December 15, 2004, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), or in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56(b).[6]  (Doc. Ent. 18 [Mtn.]).  Defendants argue that (I) this action is barred by the doctrine of res judicata or by collateral estoppel; (II) there was no interference with plaintiff's legal mail in violation of the First, Sixth, or Fourteenth Amendments; and (III) defendants are entitled to qualified  immunity and plaintiff's claim  for injunctive relief is moot because he has been  paroled.   Mtn. Br. at 4-14.[7]

---

[4]Plaintiff alleges these violations are remedied by 42 U.S.C. § 1983.  Compl. at 6.

[5]According to defendants, the plaintiff in *Avrahm v. Ahmed, et al.*, Case No. 04-CV-71291-DT (E. D. Mich.), "raised the exact same claim regarding the new mail policy against the same defendants in this action."  Mtn. Br. at 2 n.1.  On March 31, 2005, Judge Hood entered an order dismissing defendants Eberly, Stivenson and Ahmed with prejudice and dismissing defendant Adams for lack of service.

[6]On November 10, 2004, Judge Hood referred this motion to me for report and recommendation and this case to me for all pretrial proceedings.  (Doc. Ent. 6).

[7]Among the attachments to defendants' motion are: (1) a copy of MDOC Director's Office Memorandum re: "Prisoner Mail", effective October 24, 2001; (2) a copy of MDOC Emergency Rules R 791.6603,  effective November 6, 2001; (3) a copy of MDOC Notice re: renewal of Emergency Rules, effective April 22, 2002; (4) a copy of an excerpt of MDOC PD 05.03.118 Prisoner Mail, pp. 5-6, effective November 1, 2002; (5) a copy of MDOC Notice of revised MDOC PD 05.03.118, effective  November 1, 2002; (6) a copy of an excerpt of MDOC PD 05.03.118 Prisoner Mail, pp.6-7, effective November 1, 2002; (7) a copy of notice of Filing of Stipulation of Parties in *Hadix* and *Knop* cases, April 29, 2002; (7-A) a copy of the Stipulation of Parties in the *Hadix* and *Knop* cases re: MDOC's Revised Mail Policy; (8) a copy of an Order approving parties

I granted plaintiff's second motion for extension on March 1, 2005.[8]  I ordered that plaintiff file any response to defendants' dispositive motion by March 22, 2005. (Doc. Ent. 24). This Court has received no response to the defendant's dispositive motion as of the date of this Report and Recommendation.

**B.    Applicable Law**

**1.    Fed. R. Civ. P. 12 ("Defenses and Objections")**

Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections.  As to how defenses and objections should be presented, the rule states in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, . . . (6) failure to state a claim upon which relief can be granted[.]

---

stipulation in *Hadix* and *Knop* cases, filed May 2, 2002; (9) a copy of an Order of Dismissal of legal mail claims in the *Knop* case, filed September 10, 2002; (9-A) a copy of an excerpt of the docket sheet in the *Knop* case; (10) a copy of an Order of Dismissal of legal mail claims in *Hadix* case, filed September 10, 2002; (10-A) a copy of an excerpt of the docket sheet in the *Hadix* case; (11) a copy of a MDOC Notice re: PD 05.03.118 "Prisoner Mail," stating that new Policy Directive will be effective December 19, 2003; (12) a copy of the Affidavit of Jill Eberly, dated December 9, 2004; (12-A) a copy of MDOC PD 05.03.118, effective November 01, 2002; (12-B) a copy of MDOC PD 05.03.118, effective December 19, 2003; (12-C) a copy of legal mail logged for plaintiff at PMT, dated January-September 2004; (13) a copy of the Affidavit of Sal Ahmed, dated December 9, 2004; (14) a copy of the Affidavit of Lynne Adams, dated December 9, 2004; and (15) a copy of the Affidavit of William Stiverson, dated December 9, 2004.
    Also, on January 11, 2005, defendants filed a copy of corrected page one for the affidavits of Lynne Adams (Exhibit 14) and William Stiverson (Exhibit 15).  (Doc. Ent. 22).

    [8]Plaintiff filed his first motion for extension of time on December 23,2004. (Doc. Ent. 20).  I granted plaintiff's motion for extension of time and gave plaintiff until February 28, 2005 to file a response to defendant's December 15, 2004 dispositive motion.  (Doc. Ent. 21).
    Plaintiff filed a second motion for extension on February 28, 2005.  (Doc .Ent. 23).

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b).

In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that plaintiff can prove no set of facts supporting his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Plaintiff is not required to specifically set out the facts upon which he bases his claim.  *See id*. at 47.  Rather, "a short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure 8(a)(2) gives defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See id*.

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true.  *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true.  *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Conley*, 355 U.S. at 48.  A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d ed. 1995).

5

2.      **Fed. R. Civ. P. 56 ("Summary Judgment")**

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact
> would have [the] effect of establishing or refuting one of [the] essential elements
> of a cause of action or defense asserted by the parties, and would necessarily
> affect [the] application of appropriate principle[s] of law to the rights and
> obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867,

872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)).  "In evaluating a

motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . .

and assess the proof to determine whether there is a genuine need for trial."  *Gantt v. Wilson*

*Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).[9]

The movant bears the burden of demonstrating the absence of all genuine issues of

material fact.  *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).  The moving

party need not produce evidence showing the absence of a genuine issue of material fact.

Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out

to the district court – that there is an absence of evidence to support the non-moving party's

case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party discharges

---

[9]The Sixth Circuit cited both *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) in support of this
statement.

that burden, the burden shifts to the non-moving party to set forth specific facts showing a

genuine triable issue.  Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his

pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to

respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[10]  "[A] verified complaint . .

. would have the same force and effect as an affidavit and would give rise to genuine issues of

material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, "[s]upporting

and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would

be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to

the matters stated therein."  Fed. R. Civ. P. 56(e).  *See also Hamilton v. Roberts*, No. 97-1696,

1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (unpublished) (personal knowledge required);

*Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (unpublished)

(conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v.

United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412

F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient."

*Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the

United States Supreme Courts stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986),

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for

---

[10]Plaintiff signed his complaint under penalty of perjury. *See* Compl. at 11; 25 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").

7

a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).  The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a).  *Anderson*, 477 U.S. at 250.  Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**3.**     **28 U.S.C. § 1915 ("Proceedings in forma pauperis")**

Title 28 of the United States Code governs the judiciary and judicial procedure.  Section 1915, which governs in forma pauperis proceedings, provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . . the action or appeal . . . fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.**     **Analysis**

**1.**     **Plaintiff has exhausted his administrative remedies as to his legal mail claims.**

**a.**     **42 U.S.C. § 1997e ("Suits by prisoners") generally**

Title 42 of the United States Code governs the public health and welfare.  Section 1997e governs 42 U.S.C. § 1983 suits by prisoners.  This section states in part that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Sixth Circuit has held that "the new exhaustion requirement, while not jurisdictional, is mandatory

and must be addressed in the first instance by the district court in all prisoner civil rights cases–before the merits of the case are addressed." *Clark v. Beebe*, No. 98-1430, 1999 WL 993979, **1 (6th Cir. Oct. 21, 1999) (unpublished). Further, "[t]he exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Plaintiff has the burden to prove that he or she has exhausted his or her administrative remedies. In *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998) (per curiam), the Sixth Circuit held that, under 42 U.S.C. § 1997e(a), "prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies. A prisoner should attach to his § 1983 complaint the administrative decision, if available, showing the administrative disposition of his complaint." *Brown*, 139 F.3d at 1103.[11]

With regard to the dismissal of prisoner lawsuits, 42 U.S.C. § 1997e(c) provides:

> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

---

[11]The Sixth Circuit appears to be alone in placing the burden on plaintiffs to show exhaustion. The other circuit courts that have considered the question characterize lack of exhaustion as an affirmative defense. *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999); *Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir. 1999); *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998). Thus, in those circuits the defendant bears the burden of establishing that the claims are not exhausted, *see Massey*, 196 F.3d at 735, and the defense is subject to waiver and forfeiture, *see Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999); *Wendell*, 162 F.3d at 890.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c)(1)-(2).  In addition, "federal courts should not adjudicate any such claim until after exhaustion unless the complaint satisfies § 1997e(c)(2)." *Brown*, 139 F.3d at 1104.

### b.    Plaintiff's grievances

Plaintiff has submitted copies of eleven grievance forms and the related appeals.[12]

Unless otherwise noted, the grievance forms are found in Attachment B of plaintiff's complaint:

(1)    **SMT-03-12-03815-15B:**    On December 3, 2003, plaintiff completed a Step I grievance form.  The grievance claims that plaintiff received three pieces of legal mail on December 2, 2003 that had been opened and re-stapled shut. According to plaintiff, because the mail was marked with an "A" code the mail room was well aware that plaintiff had requested that all legal mail receive special handling (i.e. mail must be opened in plaintiff's presence and plaintiff must sign for the receipt of the mail).  Plaintiff alleges that he was not called out to witness the opening of the legal mail or sign for the legal mail. Plaintiff contends these acts were a clear violation of MDOC Mail policy, the *Cain* settlement, and well known state and federal laws governing such mail.  Finally, plaintiff requested that if future mail arrives that is clearly marked as legal mail that plaintiff will be called out to witness the mail being opened and sign for the receipt of the mail.  Sal Ahmed signed the December 14, 2003, Step I grievance response.

On December 19, 2003, plaintiff completed a Step II grievance appeal stating that the respondent erred in claiming that neither MDOC policy, *Cain* Settlement Agreement, state nor federal law requires legal mail to be opened in plaintiff's

---

[12]Plaintiff has also included in Attachment A of the complaint a copy of the legal mail received by plaintiff from 2002-2004.  Attachment B of the complaint contains (1) a copy of an intramural correspondence to the SMT Grievance Coordinator from plaintiff, dated January 12, 2004; (2) a copy of a letter to the SMT Grievance Coordinator from plaintiff, dated January 3, 2004; (3) a copy of the MDOC Memorandum from Harold White, Warden to plaintiff re: Modified Access, dated March 23, 2004; (4) a copy of a letter from the Attorney General to the Sandra Girard, Prison Legal Services of Michigan  re: plaintiff's modified grievance access, dated March 24, 2004; (5) a copy of a letter to the SMT Grievance Coordinator from plaintiff, dated January 8, 2004; and (6) a copy of the MDOC  Memorandum from Harold White, Warden to plaintiff re: Modified Access, dated December 22, 2003.

presence if plaintiff requested the special handling of legal mail. Warden H. White signed the January 6, 2004 Step II response denying plaintiff's grievance appeal.

Thereafter, plaintiff completed a Step III grievance reiterating his claims of repeated violations of the opening of his legal mail by not opening and signing for the receipt of the mail in the presence of plaintiff. **Plaintiff also stated: "I have learned through conversations with [SMT] staff, that 'J. Eberly' is the mail room employee [who] has been opening my incoming legal mail[.]"** Jim Armstrong responded to the Step III grievance on February 9, 2004. This response indicated that there was an appropriate response by prison staff, and that there was no error in their determination on the facts of the grievance, and denied appeal.

**(2)     SMT-03-12-03857-15B:**     On December 9, 2003, plaintiff completed a Step I grievance form regarding two pieces of legal mail received on December 8, 2003**.** Sal Ahmed, the SMT Mailroom Supervisor**,** signed the December 14, 2003, Step I grievance response. On December 9, 2003, plaintiff completed a Step II grievance appeal. Warden H. White signed the January 6, 2004, Step II response denying plaintiff's grievance appeal. **Thereafter, plaintiff completed a Step III grievance appeal in which he named defendant Eberly.** Jim Armstrong responded to the Step III grievance on February 6, 2004.

**(3)     SMT-03-12-03866-28A:**     On December 11, 2003, plaintiff completed a Step I grievance form regarding one piece of legal mail received on December 10, 2003. M. Frey signed the December 12, 2003, Step I grievance response. On December 19, 2003, plaintiff completed a Step II grievance appeal. Warden H. White signed the January 6,2004, Step II response denying plaintiff's grievance appeal. **Thereafter, plaintiff completed a Step III grievance appeal in which he named defendant Eberly.** Jim Armstrong responded to the Step III grievance on February 6, 2004.

**(4)     SMT-03-12-03874-28A:**     On December 10, 2003, plaintiff completed a Step I grievance form regarding one piece of legal mail received on December 9, 2003. M. Frey signed the December 12, 2003, Step I grievance response. On December 19, 2003, plaintiff completed a Step II grievance appeal. Warden H. White signed the January 11, 2004, Step II response denying plaintiff's grievance appeal. **Thereafter, plaintiff completed a Step III grievance appeal in which he stated: "I have . . . been able to determine through recent correspondence with [SMT] Staff, that Jill Eberly, Lynne Adams, William Stiverson . . . and Sal Ahmed are the mail room employees directly involved in the opening of my incoming legal mail[.]"** Jim Armstrong responded to the Step III grievance on February 06, 2004.

**(5)     SMT-03-12-03885-28A:**     On December 12, 2003, plaintiff completed a Step I grievance form regarding two pieces of legal mail received on December 11, 2003. On January 7, 2004, plaintiff completed a Step II grievance appeal. Warden H. White signed the January 14, 2004 Step II response denying plaintiff's grievance

11

appeal.  **Thereafter, plaintiff completed a Step III grievance appeal in which he stated: "I have . . . been able to determine through conversations and correspondence with [SMT] staff, that J. Eberly, Lynn Adams, William Stiverson . . . and Sal Ahmed are the mail room employees directly involved in the opening of my incoming legal mail[.]"**  Jim Armstrong responded to the Step III grievance on February 13, 2004.

**(6)** **SMT-03-12-03916-28A**:   On December 15, 2003, plaintiff completed a Step I grievance form regarding one piece of legal mail received on December 12, 2003.  M. Frey signed the December 17, 2003, Step I grievance response.  On January 7, 2004, plaintiff completed a Step II grievance appeal.  Warden H. White signed the January 14, 2004 Step II response denying plaintiff's grievance appeal.  Thereafter, plaintiff completed a Step III grievance appeal  reiterating his claims of repeated violations of the opening of his legal mail by not opening and signing for the receipt of the mail in the presence of plaintiff.  **Plaintiff also stated: "I [h]ave . . . been able to determine through conversations and correspondence with [SMT] staff, that J. Eberly, Lynn Adams, William Stiverson . . . and Sal Ahmed are the mail room employees directly involved in the opening of my incoming legal mail[.]"**  Jim Armstrong responded to the Step III grievance on February 10, 2004.

**(7)** **SMT-03-12-03917-28A:**   On December 16, 2003, plaintiff completed a Step I grievance form regarding one piece of legal mail received on December 15, 2003.  M. Frey signed the December 17, 2003, Step I grievance response.  On January 7, 2004, plaintiff completed a Step II grievance appeal.  Warden H. White signed the January 14, 2004 Step II response denying plaintiff's grievance appeal.  **Thereafter, plaintiff completed a Step III grievance appeal mentioning the four defendants.**  Jim Armstrong responded to the Step III grievance on February 13, 2004.

**(8)** **SMT-03-12-03928-28A:**   On December 17, 2003, plaintiff completed a Step I grievance form regarding two pieces of legal mail received on December 16, 2003.  M. Frey signed the December 19, 2003, Step I grievance response.  On January 7, 2004, plaintiff completed a Step II grievance appeal.  Warden H. White signed the January 14, 2004 Step II response denying plaintiff's grievance appeal.  **Thereafter, plaintiff completed a Step III grievance appeal mentioning the four defendants.**  Jim Armstrong responded to the Step III grievance on February 20, 2004.

**(9)** **SMT-03-12-03940-28A:**   On December 19, 2003, plaintiff completed a Step I grievance form regarding two pieces of legal mail received on December 19, 2003.  M. Frey signed the December 2003, Step I grievance response.  On January 7, 2004, plaintiff completed a Step II grievance appeal. Warden H. White signed the January 14, 2004 Step II response denying plaintiff's grievance appeal.  **Thereafter,**

12

**plaintiff completed a Step III grievance appeal mentioning the four defendants.**
Jim Armstrong responded to the Step III grievance on February 13, 2004.

**(10)    SMT-03-12-03987-28A:**    On December 23, 2003, plaintiff completed a Step I grievance regarding the same-day receipt of legal mail from U. S. Magistrate Judge Scheer.  M. Frey signed the December 30, 2003, Step I grievance response. On January 20, 2004, plaintiff completed a Step II grievance appeal. Warden H. White signed the Step II response denying plaintiff's grievance appeal. Thereafter, plaintiff completed a Step III grievance appeal. No director's response was attached to this grievance appeal.

**(11)    SMT-03-12-03988-28A**:    In December 2003, plaintiff completed a Step I grievance form regarding three pieces of legal mail received on December 22, 2003.  M. Frey signed the December 30, 2003, Step I grievance response.  On January 20, 2004, plaintiff completed a Step II grievance appeal.  Thereafter, plaintiff completed a Step III grievance appeal.  No director's response was attached to this grievance appeal.[13]

c.    **Analysis**

Plaintiff contends that his administrative grievances are "proof of exhaustion of all Administrative Remedies prior to the filing of this Complaint[.]" Compl. at 10 ¶ 7.  Although defendants do not argue that plaintiff has failed to exhaust his administrative remedies, this Court should enforce the exhaustion requirement *sua sponte*.  *See Brown,* 139 F.3d at 1004.

The MDOC grievance policy requires a prisoner to define the issue and provides that "[i]nformation provided shall be limited to the <u>facts</u> involving the issue being grieved[.]"  Policy Directive 03.02.130 ¶ T (Dec. 19, 2003); Prisoner/Parolee Grievance form (CSJ-247A).  Steps II and III of the grievance process are invoked by the prisoner if "[the] grievant is dissatisfied with

---

[13]Effective December 22, 2003, plaintiff was placed on modified access for 90 days.  On January 3, 8 and 12, 2004 plaintiff requested grievance forms from the grievance coordinator. These requests were denied, because they were considered to be duplicative of SMT-03-12-03857-15B. Compl. Attach. B.  As suggested by a March 23, 2004 MDOC Memorandum from Warden White to plaintiff, plaintiff had also filed grievances SMT-03-12-03992-28A and SMT-03-12-03990-28A. Compl. Attach. B.

the response received at Step I [or Step II] or does not receive a timely response[.]" Policy Directive 03.02.130 ¶ DD, HH (Dec. 19, 2003); Prisoner/Parolee Grievance Form (CSJ-247B).

The Sixth Circuit has stated that: "we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the process." *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). This is because the prisoner's Step I grievance must give prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claims. *Id.* at 575. Thus, the allegation of misconduct must be addressed within the Step I grievance.

All of plaintiff's Step I grievance allegations gave notice to prison officials of the basis of his statutory and constitutional claims. Each of plaintiff's eleven grievances essentially alleges that "[a]t no time was I called out to either witness the opening . . . of legal mail, nor did I sign for them." Compl. Attach. B. Additionally, before submitting a Step I grievance form, plaintiff requested to speak with the mailroom supervisor/staff; however, his requests were denied or refused. Compl. Attach. B. Thus, notice of plaintiff's allegations was given to mailroom staff generally from plaintiff.

However, a certain amount of specificity in a grievance is required to satisfy the exhaustion requirement. "[A] prisoner must administratively exhaust his or her claim as to each defendant associated with the claim[.]" *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003) (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)). Furthermore,

> [MDOC 03.02.130] require[s] that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process. By negative implication, [MDOC 03.02.130] preclude[s] administrative exhaustion of a claim against a prison official if the

14

> first allegation of mistreatment or misconduct on the part of that official is made
> at Step II or Step III of the grievance process.

*Burton*, 321 F.3d at 574.  However, MDOC PD 03.02.130 does not "preclude a prisoner from

presenting additional factual detail at Step II and Step III that clarifies an allegation made at Step

I as a means of justifying an appeal." *Burton*, 321 F.3d at 574.  In *Curry v. Scott*, 249 F.3d 493

(6th Cir. 2001), the Sixth Circuit affirmed the trial court's dismissal of plaintiff's claims against

a defendant named Howard because he was not mentioned in plaintiff's grievances. *Curry*, 249

F.3d at 505.  In so doing, however, the Court stated that "the claim against Howard . . . is a

separate claim, against a separate individual, premised on a separate and independent legal

theory. *Id.*  In the current case, the same claim is alleged for each defendant making the holding

in *Curry* distinct and inapplicable.

      Although plaintiff's allegations against each defendant were not alleged in some of the

grievances until Step II or Step III of the grievance process, plaintiff has adequately exhausted

his administrative remedies against each individual defendant.  Given the fact that plaintiff was

not allowed by prison policies to enter the mailroom and was denied permission to speak with

the mailroom supervisor by prison staff it would be initially difficult for plaintiff to discern what

specific individuals were committing the alleged violation against him.  However, by Step II and

III of the grievance process plaintiff was able to acquire additional factual detail that informed

the prison staff of the specific individuals towards whom the grievance was directed.  For

example, in the Step III grievance appeal form for SMT-03-12-03916-28A, plaintiff specifically

names all defendants and states that he obtained these names through conversations and

correspondence with SMT staff.  Thus, plaintiff has satisfied the requirements under *Curry* by

exhausting his claim against each defendant.

15

2.      **Plaintiff's claims are not barred by the doctrines of res judicata and collateral estoppel.**

Defendants argue that this action is barred by the doctrine of res judicata or by collateral estoppel.  Mtn. Br. at 4.  "The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion. The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it. Claim preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action."  *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) (citing cases) (emphasis in original).

"A claim is barred by the res judicata effect of prior litigation if all of the following elements are present: '(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'"  *Browning v. Levy*, 283 F.3d 761, 771-772 (6th Cir. 2002) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997)).  In the instant case, defendants argue that plaintiff's legal mail claims should be dismissed "on the grounds that they are barred by the doctrine of claim preclusion, or *res judicata*, as the procedure at issue was approved by a Federal District Judge, Richard Enslen, in the *Knop* and *Hadix* actions."  Mtn. Br. at 3.[14]  Defendants contend that the elements of res judicata have been met based upon (1) the consent judgment; (2) the fact that plaintiff is a *Hadix* class member based upon his confinement

_____

[14]*Hadix v. Johnson*, USDC-WD No. 4:92-CV-110; *Knop v. Johnson*, USDC-WD No. 1:84-CV-651.  Mtn. Ex. 7.

16

at SMT; (3) their contention that the *Hadix*/*Knop* actions and the case at bar raise the same issues; and (4) "[b]oth the *Hadix*/*Knop* cases and this case challenge the exact revised policy directive that allows prison officials to open legal mail outside a prisoner's presence."  Mtn. Br. at 6.

The doctrine of collateral estoppel "applies only when (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue."  *Hammer v. Immigration and Naturalization Service*, 195 F.3d 836 (6th Cir. 1999).  Defendants argue that "[p]laintiff is collaterally estopped from bringing his legal mail claim[.]"  In support of this argument, defendants maintain that the *Hadix* and *Knop* plaintiffs "challenged the same provisions of the revised mail policy that plaintiff is challenging here."  Defendants note that "the May 1, 2002 policy directive was ultimately approved," and "Judge Enslen entered a final order dismissing the legal mail claims in both class actions."  Therefore, defendants argue, the *Hadix* and *Knop* proceedings satisfy the collateral estoppel elements.  Mtn. Br. at 7.

In April 2002, the parties in the *Hadix* and *Knop* cases filed a stipulation regarding the implementation of the MDOC's May 1, 2002 revised legal mail policy.  Mtn. Exhibits 7, 7-A.  Judge Richard Enslen entered an order approving the stipulation on May 2, 2002.  Mtn. Ex. 8.  On September 10, 2002, in accordance with the stipulation, Judge Enslen dismissed the legal mail claims in these cases.  Mtn. Exhibits 9, 9-A, 10, 10-A.  Defendants maintain that "the

17

plaintiffs in the *Hadix* and *Knop* class actions sought to enjoin the changes[to the legal mail policy;] the parties stipulation approving the May 2, 2002 revised policy directive was filed[;] and [a]ll legal mail claims were dismissed September 10, 2002 . . . . [d]efendants contend, therefore, that plaintiff's claim is barred."  Mtn. Br. at 5.

The Court should not grant defendants' motion on the basis that it is barred by the doctrines of res judicata or collateral estoppel.  Here, Magistrate Judge Ellen S. Carmody's February 7, 2005 Report and Recommendation in *Mallory-Bey v. MDOC* is directly on point.  In addressing defendant's assertion that plaintiff's claim was barred by the doctrines of res judicata and collateral estoppel "because this particular issue was resolved in the *Hadix* and *Knop* class actions[,]" she concluded that "[n]either of these preclusion doctrines have any application in the present matter."  *Id*. at 12-13.  In support of her statement that "there [was] neither an identity of issues nor identity of causes of action[,]" Magistrate Judge Carmody stated

> [w]hile the issue of the mail policy's constitutionality was not irrelevant to the resolution of the issues raised by the parties' motions in *Knop* and *Hadix*, none of the parties challenged (i.e., attempted to litigate) the constitutionality of the mail policy.  Rather the parties in *Knop* and *Hadix* disputed whether the defendants should be permitted to modify the relevant consent decree and court order.

*Mallory-Bey v. MDOC*, Case No. 1:04-CV-137, 13 (W. D. Mich. Feb. 7, 2005).  She further stated that "the issues presented by the *Knop* and *Hadix* motions were never actually litigated and there was never a decision on the merits regarding such issues."  *Id*. at 14.  Judge Enslen adopted this report and recommendation on April 5, 2005.

The Court should find Magistrate Judge Carmody's reasoning persuasive and should, therefore, deny defendants' motion for summary judgment insofar as it asserts that plaintiff's claims are barred by the doctrine of res judicata.

18

3.        **The Eleventh Amendment bars portions of plaintiff's claims.**

Plaintiff sues defendants in their official and personal capacities.  Compl. at 1, 5.  Plaintiff may not sue defendants for damages in their official capacities, because "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  42 U.S.C. § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  However, plaintiff may seek injunctive relief from state officials sued in their official capacity.  *Will*, *supra*, 491 U.S. at 71 n. 10.

Plaintiff may sue defendants for damages in their personal capacities, because 'state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.  The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."  *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

For the foregoing reasons, the Court should only consider the claims against defendants insofar as they are sued in their personal capacities to the extent that plaintiff seeks monetary damages.

4.        **MDOC PD 05.03.118 (Dec. 19, 2003) ¶ EE is unconstitutional under *Turner*.**

a.        **A prisoner's First Amendment right to receive mail**

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to

assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.
The 6th Circuit has repeatedly asserted that "[a] prisoner's right to receive mail is protected by
the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v.
Procunier*, 417 U.S. 817, 822 (1974); *Parrish v. Johnson*, 800 F.2d 600,603 (6th Cir. 1986).

In *Thornburgh v. Abbott*, 490 U.S. 401 (1989), the Supreme Court held that the
reasonableness test set forth in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987) governs challenges to
regulations regarding incoming prisoner mail. *Thornburgh*, 490 U.S. at 413-414.   In *Turner*, the
Supreme Court instructed that "when a prison regulation impinges on inmates' constitutional
rights, the regulation is valid if it is reasonably related to legitimate penological interests."
*Turner*, 482 U.S. at 89.   "The *Turner* Court reviewed four factors that are relevant in determining
the reasonableness of a challenged prison regulation[:]

> 'First there must be a valid, rational connection between the prison regulation and
> the legitimate governmental interest put forward to justify it.' [*Turner*, 482 U.S. at
> 89]. If, not the regulation is unconstitutional, and the other factors do not matter. *Id.*
> at 89-90[]. Unlike the first factor, the remaining factors are considerations that must
> be balanced together: (2) 'where there are alternative means of exercising the right
> that remain open to prison inmates'; (3) 'the impact th at accommodation of the
> asserted constitutional right will have on guards and other inmates, and on the
> allocation of prison resources generally'; and (4) whether there are 'ready
> alternatives' available 'that fully accommodate the prisoner's rights at *de minimis*
> cost to valid penological interests.' *Id.* at 90-91[.]

*Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994).  Therefore, the question before the Court
is whether MDOC PD 05.03.118 ¶¶ DD, GG, which permit legal mail to be opened outside of the
prisoner's presence is constitutional under *Turner*.

**b.     MDOC PD 05.03.118 has been revised several times since September 11, 2001.**

On October 24, 2001, the MDOC  issued a Director's Office Memorandum modifying
PD 05.03.118.  The memorandum stated that all mail would be opened in one location and "legal

20

mail to a prisoner will no longer be opened in the prisoner's presence under any circumstances."
Mtn. Ex. 1.

On November 6, 2001, MDOC filed emergency rules with the Michigan Secretary of
State. Emergency Rule 1 suspended the practice of opening legal mail in the prisoner's presence
upon the prisoner's request, and Emergency Rule 2 amended R 791.6603. Mtn. Ex. 2. On April
22, 2002, the Emergency Rules were extended for six months past May 6, 2002. Mtn. Ex. 3.

Effective May 1, 2002, MDOC PD 05.03.118 was revised. Mtn. Ex. 4. Effective
November 1, 2002, MDOC PD 05.03.118 was revised "due to amendments to Administrative
Rule 791.6603[.]" Mtn. Ex. 5. In this revision, the "special handling of legal mail" was set forth
in ¶¶ CC-GG. Mtn. Ex. 6.

Effective December 19, 2003, a new version of the policy superceded the November 1,
2002 version. Mtn. Ex. 11. MDOC PD 05.03.118 ("Prisoner Mail"), effective December 19,
2003, provides for "special handling of legal mail". *Id*. ¶¶ DD-GG. In part, it provides:

> A prisoner may have his/her incoming legal mail receive special handling as set
> forth in Paragraph EE by submitting a written request to the institution's
> mailroom Supervisor, . . . as appropriate. Only mail from an attorney or law firm,
> a legitimate legal service organization, a non-prisoner paralegal working on
> behalf of an attorney, law firm, or legal service organization, the Department of
> Attorney General, a prosecuting attorney's office, a court or a clerk of the court
> shall receive this special handling, and only if the mail is clearly identified on the
> face of the envelope as being from one of the above. It is not sufficient for the
> envelope to be simply marked 'legal mail'. . . .

MDOC PD 05.03.118 (Dec. 19, 2003) ¶ DD. Plaintiff claims that, "[a]t all times relevant to
these matters, [he] had on file with the [MDOC] and the [d]efendants, his specific request that all
of [his] legal mail receive 'special handling', as evidenced by the 'A Code' clearly marked on all
of [p]laintiff's legal correspondence in this matter which signifies that an inmate has requested

'special handling' of his legal mail[.]" Compl. at 9-10 ¶ 5.

The MDOC regulation at issue is the Prisoner Mail policy specifically outlined in PD 05.03.118 that permitted legal mail to be opened outside a prisoner's presence.  Specifically, "[i]ncoming legal mail for a prisoner who has requested special handling of legal mail . . . shall be opened and inspected for money, controlled substances and other physical contraband in the area of the facility designated to open all prisoner mail.  The content of the mail shall not be read or skimmed.  All physical contraband shall be confiscated and the mail securely sealed prior to the delivery to the prisoner." *Id*. at ¶ EE (effective Dec. 19, 2003).

On February 7, 2005, Magistrate Judge Carmody entered the above-described report and recommendation in *Mallory-Bey v. MDOC*, Case No. 1:04-CV-137, 13 (W. D. Mich.).  On April 15, 2005, Judge Enslen adopted Magistrate Judge Carmody's report and recommendation and ordered that the MDOC was "immediately and permanently enjoined from opening (outside the prisoner's presence) the legal mail of any prisoner who properly requests, or has previously requested, that his or her legal mail be opened only in his or her presence." *Mallory-Bey v. MDOC*, Case No. 1:04-CV-137, 3-4 (W. D. Mich.).

On April 18, 2005, the MDOC issued Director's Office Memorandum (DOM) 2005-10 in response to Judge Enslen's order.  Effective June 6, 2005, MDOC revised PD 05.03.118, in part to bring ¶¶ CC and EE in conformity with DOM 2005-10.  ¶ EE now states, "Pursuant to a federal court order issued on April 15, 2005, incoming legal mail for a prisoner who has requested special handling of legal mail pursuant to Paragraph DD shall be opened and inspected for money, controlled substances and other physical contraband in the prisoner's presence."  ¶ DD is virtually identical in language to that set forth in the above-quoted, December 19, 2003

22

version of the same paragraph.

### c.        Parties arguments

On October 4, 2004, the date plaintiff's claim was filed, the December 19, 2003 version

of MDOC PD 05.03.118 was in effect.  Plaintiff claims defendants Eberly, Adams, Stiverson and

Ahmed violated the First Amendment by "knowingly and willingly open[ing] said mail outside

the presence of the [p]laintiff, and, prior to February 4, 2004, without the [p]laintiff signing for

receipt of said mail." Compl. at 8 ¶ 1.  Furthermore, plaintiff explains:

> All mail involved in this claim was clearly identified as 'legal mail' by the sender
> or sender's address, as well as by the [d]efendants as evidenced by the 'A Code'
> marked on each individual [piece] of legal mail involved in this [c]omplaint that
> signifies that pursuant to [MDOC] Policy and Procedure, said mail is 'legal mail'
> as defined by law and is to receive 'special handling'[.]

Compl. at 8 ¶ 1.

Defendants argue that "there was no interference with plaintiff's legal mail in violation of

the First . . . Amendment." Mtn. Br. at 3-4.  Specifically, they argue, "legitimate penological

interests support the MDOC policy requiring that all mail be opened in a central location[.]"

Mtn. Br. at 8-10.

### d.        Analysis

Plaintiff's complaint lists 132 pieces of legal mail on which his complaint is based.[15]

Compl. at 10 ¶6, Attach. A.  According to the court in *Muhammad*, legal mail is defined as mail

from private attorneys, courts, legal assistance organizations, and the Attorney General's office.

*Muhammad*, 35 F. 3d at 1085.  Therefore, this Report and Recommendation applies only to the

---

[15]They are numbered 1-133, but 127 is missing.  Plaintiff claims that these pieces of legal
mail were "opened outside [his] presence[.]" Compl. at 10 ¶ 6.

violations involving legal mail, because some correspondence does not fit within the confines of

the definition of legal mail or plaintiff has not provided evidence that the individual listed in

complaint attachment A falls within the definition outlined in *Muhammad*.[16]

As to the first factor, the *Turner* Court stated: "[T]here must be a 'valid, rational

connection' between the prison regulation and the legitimate governmental interest put forward

to justify it." *Turner*, 482 U.S. at 89 (citing *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).  In

the case at bar, therefore, the Court must consider whether there is a "valid, rational connection"

between the practice of opening legal mail outside the prisoner's presence and guarding from

acts of terrorism through the mail.

In support of their argument that the MDOC PD 05.03.118's requirement of opening all

mail in a central location is supported by legitimate penological interests, defendants argue that

prisoners' First Amendment rights may be limited.  Mtn. Br. at 9.  Defendants contend that

"today we all must be on guard for acts of terrorism . . . [t]he fact that there has not been a recent

rash of anthrax scares is immaterial.  Other forms of terrorism through the mails [sic] still

occur."  Mtn. Br. at 9-10.   They also contend that "the centralized opening of *all* mail in prison

facilities to inspect for contraband is a reasonable and limited way of protecting both the

confidentiality of inmate legal mail as well as protecting all persons in the facility from potential

---

[16]Plaintiff has included within Attachment A a list of legal mail he received at SMT from 2002-2004.  Most pieces on the list can be defined as legal mail.  However, there are several pieces of mail regarding which plaintiff has not provided this Court with enough information to discern whether or not they would qualify as legal mail.  For example, in January 2004 and on March 1, 2004, June 4, 2004 and June 17, 2004, plaintiff received mail from PLSM.  While PLSM may be "Prison Legal Services of Michigan", plaintiff has not provided this Court with evidence to confirm this inference.  There are also letters from Liz Jacobs received on November 12, 2002 and April 25, 2003, and this Court is unable to determine whether this individual is plaintiff's attorney.

24

harm." Mtn. Br. at 10. In defendants' opinion, MDOC PD 05.03.118 "is rationally related to ensuring security interests in the prison system while still protecting the prisoners' rights to confidentiality of their legal mail." Mtn. Br. at 10. Defendants argue that "the legitimate penological interest is protecting the entire prison population and staff members from biological terrorism, such as anthrax spores in incoming mail." Mtn. Br. at 13.

"[T]he opening of 'legal mail' should generally be in the inmate's presence in accordance with appropriately drafted and uniformly applied regulations." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. June 19, 1996) (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)). Thus, there is a drastic distinction between the treatment of legal and non-legal mail within the prison system. *See Sallier v. Brooks,* 343 F.3d 868, 874 (6th Cir. 2003) ( "when the incoming mail is 'legal mail,' we have a heightened concern . . . especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney client privilege, or right of access to the courts"). However, as one court has stated, "[t]he Supreme Court has not addressed the . . . question of whether a regulation permitting opening and inspecting of legal mail outside of the addressee prisoner's presence is constitutional." *Allah v. Brown*, 351 F. Supp. 2d 278, 281 (D.N.J. Oct. 26, 2004).

According to the MDOC, the November 6, 2001 emergency rules were based upon "recent events involving hazardous, dangerous and other suspicious materials being sent through the United States mail system[.]" Mtn. Br. Ex. 2. Further, the MDOC stated that it was necessary "to limit potential exposure by requiring incoming mail to be opened in one location at each Department worksite to protect the health and safety of both employees and prisoners." *Id*. However, as the Court in *Allah* accurately points out, "[t]he only additional person protected

from exposure by the [new] Legal Mail Policy is the inmate himself, who is at liberty to waive his first amendment right to be present." *Allah*, 351 F. Supp.2d at 282.

Recently the Sixth Circuit has clearly stated with regard to prisoner legal mail from an attorney that "[t]here is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise." *Sallier*, 343 F.3d at 877-878. Therefore, the MDOC prisoner legal mail policy with regard to mail from plaintiff's attorney fails the first component of the *Turner* test rendering the policy unconstitutional and the other factors of the *Turner* test irrelevant.[17] In light of the conclusion reached in *Mallory-Bey*, the Court should not be persuaded by defendants' distinction of *Sallier*.[18]

Furthermore, at least one court has addressed the issue "whether the *Turner* standard requires [prisoners'] presence in the context of today's heightened terrorism concerns, and more specifically, the threat of anthrax contamination through the mail." *Allah*, 351 F. Supp.2d at 281. In that case, plaintiff prisoners challenged the constitutionality of a post-September 11, 2001, Legal Mail Policy "requiring that all incoming legal mail be opened outside of the prisoners'

---

[17]U.S. Magistrate Judge Ellen Carmody reached the same conclusion within her Report and Recommendation under the *Turner* doctrine. *Mallory-Bey v. MDOC*, Case No. 1:04-CV-137, 17 (W. D. Mich. Feb. 7, 2005).

[18]The Sixth Circuit decided *Sallier* on September 18, 2003, and the decision was based upon mail dated from March 30, 1994 to February 5, 1996. *Sallier*, 343 F.3d at 872. Defendants claim that *Sallier* is inapposite to the extent that "[t]he policy directive version at issue here became effective on May 1, 2002, which in turn was based on a Director's Office Memorandum issued October 24, 2001 and Emergency Rules filed November 6, 2001 and extended May 6, 2002." Mtn. Br. at 9. However, in her February 7, 2005 report and recommendation, Magistrate Judge Carmody cited *Sallier*, 343 F.3d at 877-878, and stated "[t]he Court finds nothing in the language of *Sallier* suggesting that the above statement is an anyway limited." *Mallory-Bey v. MDOC*, Case No. 1:04-CV-137, 18 (W. D. Mich. Feb. 7, 2005).

presence and checked for contraband and anthrax contamination." *Id*. at 279-280.  The Court found that "there [wa]s no reasonable connection between the Legal Mail Policy and the Defendants' asserted interest[,]" and held that "[g]iven the importance of the rights at issue in this case, the inconvenience associated with opening legal mail in the presence of the inmate addressees do[es] not outweigh Plaintiffs' First Amendment right[] to freely communicate with their attorneys and the courts." *Id*. at 281, 282-283.  The court "ordered that Defendants immediately cease and desist the practice of opening inmates' legal mail outside of their presence." *Id*. at 283.

If the first *Turner* factor is not satisfied, "the regulation is unconstitutional, and the other factors do not matter." *Muhammad*, 35 F.3d at 1084.  Therefore, defendants' motion should not be granted to the extent it seeks dismissal of plaintiff's First Amendment on the basis that the December 19, 2003 legal mail policy was constitutional.

**5.    Plaintiff has not stated a Sixth Amendment claim upon which relief may be granted.**

**a.     Parties' Arguments**

Plaintiff claims that defendants Eberly, Adams, Stiverson and Ahmed violated his "Sixth Amendment right to Attorney/Client Privilege when they opened [his] legal mail outside the presence of the [p]laintiff, and, prior to February 4, 2004, without the [p]laintiff signing for receipt of said mail[.]" Compl. at 8 ¶ 2.  Plaintiff claims that defendants actions "resulted in [his] privileged legal correspondence being read and even dis[s]eminated among other [MDOC] employees, including [MDOC] employees involved in litigation with the plaintiff[.]" Compl. at 9 ¶ 4.  Also, he states, there have been:

> . . . numerous instances whereby [his] privileged legal mail caused harm to [his] legal proceedings as well as becoming available to employees of the [MDOC],

27

> including employees both currently involved in litigation with [him], as well as employees that were involved in litigation with [him] that, due to the aforementioned violations, [he] was unsuccessful in obtaining relief as a result of his confidential legal material becoming available to said individuals as it provided an unfair advantage to said employees involved in said litigation with [him][.]"

Compl. at 10 ¶ 6.

Defendant contends that "[p]laintiff has not stated a claim of violation of the Sixth Amendment[,]" as "[he] has not alleged any interference with his legal mail pertaining to any criminal prosecution."  Mtn. Br. at 11.

**b.    Analysis**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process."  *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004) (citing cases).  The Sixth Amendment extends only to "protect the attorney-client relationship from intrusion in the criminal setting[.]"  *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) (internal citations omitted) (". . . while the claim here would insulate all mail from inspection, whether related to civil or criminal matters.").

Plaintiff does not specifically allege within the complaint the particular legal proceedings that were allegedly compromised when his mail was opened.  Furthermore, plaintiff does not

28

allege an interference of criminal prosecution but generally states that the alleged violation "caus[ed] [him] serious damage to the legal proceedings in that matter[.]" Compl. at 9 ¶ 4. Plaintiff's Sixth Amendment claim is conclusory and lacks support by any facts or evidence; therefore, he has not stated a Sixth Amendment claim upon which relief may be granted.

**6.      Plaintiff's access to courts claim does not survive summary judgment.**

**a.      Plaintiff's claim**

Plaintiff alleges that defendants violated his "Fourteenth Amendment right of access to the Courts. . . ." Compl. at 6. Specifically, plaintiff claims that defendants Eberly, Adams, Stiverson and Ahmed violated his "Fourteenth Amendment due process right of access to the courts when they opened [his] legal mail outside the presence of the [p]laintiff, and, prior to February 4, 2004, without the [p]laintiff signing for receipt of said mail[.]" Compl. at 8 ¶ 3. Plaintiff claims that defendants' actions resulted in "numerous instances of . . . receiving time-sensitive legal papers in an untimely fashion that affected ongoing legal proceedings in a detrimental fasion[.]" Compl. at 8-9 ¶ 4. Additionally,  in "at least one verified instance . . . Plaintiff's legal mail never reach[ed] the Plaintiff, causing [him] serious damage to the legal proceedings in that matter[.]"  Compl. at 9 ¶ 4.[19] Furthermore, plaintiff contends, "to the best of [his] knowledge and information based on information received from [his] attorn[e]ys as well as outside organizations involved in ongoing legal matters with the Plaintiff, [defendants' actions have] resulted in numerous legal papers never reaching the Plaintiff that said attorneys and

---

[19]The Court assumes this is the "one verified instance of Plaintiff's legal mail not delivered to him (#67 - Mike Cox)[.]" Compl. at 10 ¶ 6.

organizations sent to the Plaintiff." Compl. at 9 ¶ 4.[20]  Additionally, plaintiff contends:

> . . . the [d]efendants['] actions in not having [him] sign for receipt of his legal
> mail ha[ve] caused [him] to suffer damages in proceedings he was/is involved in
> as it den[i]ed/denies [him] any ability to present proof of service in said matters
> when [his] legal mail was/is delivered to him in an untimely manner by the
> [d]efendants causing [him] to miss court deadlines or other crucial time-sensitive
> legal matters[.]

Compl. at 9 ¶ 4.  He claims there are "67 pieces of legal mail being opened and <u>not</u> signed for by

the Plaintiff[.]" Compl. at 10 ¶ 6.

**b.     Access to courts generally**

Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S.

817, 821 (1977).  "The right springs from the Due Process Clauses of the Fifth and Fourteenth

Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F.

Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of

Article IV.  *See Chambers v. Baltimore and O.R. Co.*, 207 U.S. 142, 148 (1907).[21]  A prisoner's

access to the courts must be adequate, effective and meaningful.  *See Bell v. City of Milwaukee*,

---

[20]According to plaintiff, discovery of the mail logs should enable him to "more specifically verify other missing or delayed legal correspondence[.]" Compl. at 9 ¶ 4.

Exhibit 12-C to defendants' motion is the legal mail log from January - September 17, 2004. According to defendants, "[t]he log for January 2004 does not have an area for the prisoner's signature, because at that time legal mail was delivered sealed . . . to the cell blocks for delivery to the addressee prisoner.  The log was changed effective February 2, 2004, adding an area for a prisoner's signature on the mail log when the legal mail is given to the prisoner.  Also, at the time the procedure was changed requiring that the prisoner was called out by the Mail Room staff and handed his legal mail." Mtn. Br. at 4, 9.

[21]Defendant argues that "since the First Amendment is the primary source for this right, analysis under the Fourteenth Amendment due process clause is unnecessary."  Mtn. Br. at 10. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

746 F.2d 1205, 1261 (7th Cir. 1984); *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983).

 A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (June 24, 1996). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific instance in which he was actually denied access to the courts.") (internal quotation omitted). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355.

### c. Analysis

 According to defendants, "[p]laintiff does not elaborate what mail was 'untimely' and what injury an untimeliness caused, nor does he allege any facts to support his speculation that some legal papers never reached him." Mtn. Br. at 2. Defendants maintain that "[d]uring 2004, [p]laintiff continually refused to sign for his legal mail, as is reflected in the legal mail log." Mtn. Br. at 4, 9. Defendants argue that "[p]laintiff has not alleged or shown a violation of his right of access to the courts[.]" Mtn. Br. at 10. Relying upon *Lewis*, 518 U.S. at 351-354, defendants argue that "[p]laintiff has not alleged that the handling of his legal mail resulted in the loss of any non-frivolous legal claim." Mtn. Br. at 10.

31

Plaintiff is or was a party to other cases in this Court which might have collaterally attacked his sentence or challenged the conditions of his confinement, *Lewis*, 518 U.S. at 355: (1) *Horacek v. Davis*, 95-CV-72774-PJD [Prisoner: Civil Rights]; (2) *Horacek v. Hawkey*, 01-CV-71674-VAR [Prisoner: Civil Rights]; (3) *Horacek v. Barge*, 01-CV-60111-MOB-WC [Prisoner: Civil Rights]; (4) *Horacek v. McClain*, 03-CV-73206-DPH-SDP [Prisoner: Civil Rights]; and (5) *Horacek v. White*, 04-CV-74293-DPH-SDP [Habeas Corpus (General)]. However, plaintiff has not specified which, if any, of these cases were compromised by the alleged interference.

Furthermore, under *Lewis,* dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). *See also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999);[22] *Baker v. Wells*, No. 01-2532, 2002 WL 927021, **2 (6th Cir. 2002) (unpublished).[23] As described above, paragraph 4 of plaintiff's complaint does not mention specific instances of prejudice, but, rather, generally states that "there was serious damage to legal proceedings" as a result of the violation. Compl. at 9. Therefore, plaintiff has failed to state an access of courts claim upon which relief may be granted.

---

[22]"Apart from his conclusory statement that the defendants impaired his right of access, Boswell does not explain how he suffered harm. He does not allege that the incoming letter pertained to ongoing or anticipated litigation challenging either his sentence or the conditions of his confinement[]; also, he never mentions the contents of the letter. He does not allege that, by opening the letter in his absence, the defendants affected his access to the courts." *Boswell*, 169 F.3d at 387 (internally citing *Lewis*, 518 U.S. at 355).

[23]"He did not allege how the opening of his mail outside his presence prejudiced any legal proceeding. []Baker utterly failed to show how the loss of his word processor had prejudiced any legal action." *Baker v. Wells*, No. 01-2532, 2002 WL 927021, **2 (6th Cir. 2002) (unpublished).

7.     **Defendants Adams, Ahmed, and Stiverson were not personally involved.**

a.     **Parties' arguments**

Plaintiff asserts that all defendants "were personally and professionally involved as they were party to numerous verbal discussions with [p]laintiff regarding said violations and instances, and/or party to written correspondence, including but not limited to MDOC Administrative Grievances" and "act[ed] at times beyond the scope of their professional duties as allowed by law with foreknowledge of said actions, therefore each individual [d]efendant acted willingly and knowingly or failed to act to stop said violations."  Compl. at 7.

Defendants argue that defendants Adams, Ahmed and Stiverson "were not personally involved with [p]laintiff's legal mail; therefore, they have no Section 1983 liability."  Mtn. Br. at 4.  *See also* Mtn. Br. at 8.  Defendants argue that "[i]t is clear that [d]efendants Ahmed, Adams, and Stiverson did not violate any of the Plaintiff's constitutional rights because they did not open legal mail.  If [d]efendants did not open [p]laintiff's legal mail they did not violate [p]laintiff's constitutional rights, thus 'there is no claim under § 1983, and [d]efendants have no need for a qualified immunity defense.'"  Mtn. Br. at 12 (citing *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999).[24]

b.     **Personal involvement generally**

Liability in a § 1983 action cannot be based on a theory of *respondeat superior.  See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).  "[T]he

_____

[24]"As we hold that sufficient probable cause existed, this necessarily means that the arrest complied with constitutional requirements and that Ahlers was not deprived of a constitutional right. As a result, there is no claim under § 1983, and Defendants have no need for a qualified immunity defense."  *Ahlers*, 188 F.3d at 374.

mere right to control without any control or direction having been exercised and without any

failure to supervise is not enough to support § 1983 liability." *Monell v. Department of Soc.*

*Servs.*, 436 U.S. 658, 694 n.58 (1978), citing *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).

As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat
> superior.  There must be a showing that the supervisor encouraged the specific
> incident of misconduct or in some other way directly participated in it.  *At a
> minimum, a § 1983 plaintiff must show that a supervisory official at least
> implicitly authorized, approved or knowingly acquiesced in the unconstitutional
> conduct of the offending subordinate.*"

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v.*

*Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see*

*also*, *Monell*, 436 U.S. at 693-95; *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Dunn v.*

*Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

Furthermore, an allegation that a supervisor was aware of an actionable wrong committed

by a subordinate and failed to take corrective action "is insufficient to impose liability on

supervisory personnel under § 1983."  *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  As the

*Haydon* court stated: "A supervisory official's failure to control, or train the offending individual

is not actionable, unless the supervisor 'either encouraged the specific incident or in some other

way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County,*

*Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

**c.     Analysis**

Despite plaintiff's claims that defendants conversed or corresponded with him about the

issues at bar, Compl. at 7, it is clear that defendants Ahmed, Adams, and Stiverson were not

personally involved in the opening of plaintiff's legal mail outside of his presence.  According to

34

their affidavits, defendants Ahmed, Adams, and Stiverson were not engaged in the opening of

legal mail although they worked in the mail room.  Specifically, Ahmed states that "[a]s mail

room supervisor, [he] merely supervised other staff. [He] did not personally open any mail."

Mtn. Ex. 13 ¶ 5.  Also, Adams states that "[f]rom December 1, 2003 through February 4, 2004,

[she] was temporarily assigned to the Mail Room, processing incoming/outgoing mail for the

facility[,]" and "[she] never opened any legal mail while assigned to the Mail Room, [she]

opened only regular mail."  (Doc. Ent. 22 ¶ 2), Mtn. Ex. 14 ¶ 3.  Finally, Stiverson states that

"[he] was temporarily assigned to the Mail Room from December 19, 2003 through February 10,

2004, processing incoming/outgoing mail for the facility[,]" and "[he] never opened any legal

mail while assigned to the Mail Room. [He] opened only regular mail."  (Doc. Ent. 22 ¶ 2), Mtn.

Ex. 15 ¶ 3.  Because these defendants did not open plaintiff's legal mail, they did not violate

plaintiff's First Amendment rights and, therefore, plaintiff has no relative claim under § 1983.

*See Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6ᵗʰ Cir. May 27, 2005) ("Because § 1983

liability cannot be imposed under a theory of *respondeat superior,* proof of personal involvement

is required for a supervisor to incur personal liability.") (citing *Taylor v. Mich. Dep't of Corr.*, 69

F.3d 76, 80-81 (6th Cir.1995)).

Furthermore, to the extent plaintiff's claims against defendant Ahmed are based upon his

responses to Step I grievances, plaintiff has not stated a claim of constitutional magnitude.  As

previously noted, defendant Ahmed responded to two of plaintiff's Step I grievances.  Claims

which are based simply on the denial of a grievance do not state a claim of constitutional

dimension.  *See Martin v. Harvey*, No. 00-1439, 2001 WL 669983, **2 (6th Cir. 2001)

(unpublished) ("The denial of the grievance is not the same as the denial of a request to receive

medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts[].");  *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.").

Finally, to the extent plaintiff's claims against defendant Ahmed are based upon his role as mail room supervisor, "the § 1983 liability of supervisory personnel must be based on more than the right to control employees."  *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984) (citing *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982)).  *See also Turner v. City of Taylor*, 412 F.3d 629 (6th Cir. June 15, 2005); *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. June 8, 2005).

**8.    Defendant Eberly is entitled to qualified immunity on plaintiff's claim that she opened his legal mail pursuant to an unconstitutional mail policy.**[25]

**a.    Qualified immunity generally**

The Supreme Court has stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[25]The defense of qualified  immunity should only be addressed after determining whether plaintiff has stated a constitutional claim upon which relief can be granted.  "[T]he better approach is to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.  Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."  *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*,

434 U.S. 555, 565 (1978) and *Wood v. Strickland,* 420 U.S. 308, 322 (1975)) (footnote omitted.)

"[Q]ualified immunity would be defeated if an official '*knew or reasonably should have known*

that the action he took within his sphere of official responsibility would violate the constitutional

rights of the [plaintiff], *or* if he took action *with the malicious intention* to cause a deprivation of

constitutional rights or other injury[.]'" *Harlow*, 457 U.S. at 815 (citing *Wood*, 420 U.S. at 322).

The doctrine of qualified immunity is intended to protect public officials "from undue

interference with their duties and from potentially disabling threats of liability." *Harlow*, 457

U.S. at 806. The Sixth Circuit has stated that the qualified immunity inquiry requires a three-

step analysis: (1) has plaintiff alleged a violation of a constitutional right?; (2) if so, was that

right clearly established at the time of the alleged conduct?; and (3) if the right was clearly

established, has plaintiff alleged and sufficiently supported that the official actions were

objectively unreasonable in light of this clearly established right? *See Dickerson v. McClellan*,

101 F.3d 1151, 1157-58 (6th Cir. 1996). Ultimately, "the burden of proof is on the plaintiff to

show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d

303, 311 (6th Cir. 2000) (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.

1991).

**b.      Parties Arguments**

According to defendants, "[p]laintiff's legal mail was handled in accordance with the

revised and approved MDOC mail policy[.]" Mtn. Br. at 4. Specifically, defendants argue that

"[d]efendant Eberly, who did process legal mail, is entitled to qualified immunity." Mtn. Br. at

12. Defendants contend that "[t]he law is not clearly established that inspecting incoming legal

mail outside a prisoner's presence to protect against bioterrorism is unconstitutional."  Mtn. Br. at 13.  Defendants maintain that "the mail policy revision is reasonable and related to the legitimate penological interest of maintaining the health and welfare of prisoners and staff, and that it is since the incoming legal mail is merely inspected but not read, it does not violate prisoners' First Amendment rights."  Mtn. Br. at 13-14.

**c.**      **Analysis**

According to defendants, "[d]efendant Eberly . . . was the person primarily assigned to handling legal mail."  Mtn. Br. at 8.  Jill Eberly is an employee of the MDOC assigned to the mailroom who processes "incoming and outgoing  prisoner and facility mail according to policy and procedures."  Mtn. Ex. 12 [Eberly Affid.] ¶ 2.  She acknowledges that "[a]ll mail was clearly identified as 'legal mail' by sender, as well as by 'A Code' that signifies legal mail by DOC policy[,]" and "[p]laintiff has been designated for special handling of his legal mail, and his legal mail is handled as such."  Eberly Affid. ¶ 3.  Defendant Eberly claims that she "did not infringe on [p]laintiff's First, Sixth, or Fourteenth Amendment rights, as mail was merely inspected for contraband as required by MDOC policy.  The mail was not read or skimmed for content or for privileged communications."  Eberly Affid. ¶ 5.  She also claims that "information from his legal mail has never been disseminated among other MDOC employees.  I open legal mail as mandated by the above referenced policy[.]"  Eberly Affid. ¶ 7.  She also claims that "all legal mail is delivered intact on the day it is received at the institution."  Eberly Affid. ¶ 8.

If the Court agrees with my foregoing conclusion that plaintiff has stated a First Amendment claim upon which relief may be granted, then it is clear that defendant Eberly violated plaintiff's First Amendment rights by directly participating in the opening of plaintiff's

38

legal mail and initially plaintiff has alleged a valid § 1983 claim against defendant Eberly.

However, defendants' argument that the law is not clearly established is persuasive. As defendants note:

> The Supreme Court and the Sixth Circuit Court of Appeals cases upholding regulations requiring that incoming prisoner legal mail be opened in the prisoner's presence were decided long before acts of biological terrorism were prevalent or unleashed upon this country. Defendants are unaware of any decided cases post September 11, 2001 which have addressed the issue of legal mail being opened outside a prisoner's presence as a security measure, other than . . . in the *Hadix* and *Knop* consent decree cases where the new policy and administrative rule were challenged, but approved by the court. The situation that . . . [d]efendant Eberly confronted, however, is different than that in *Wolff*, *Knop*, *Lavado*, *Kensu*, and *Sallier*. All those cases, including *Sallier*, involved time periods before the terrorist attacks of 2001. Since those attacks, the MDOC policy was revised - and the revision approved by a federal court judge - to require opening and inspection of all mail, including legal mail, in the mail room.

Mtn. Br. at 13.

The United States Supreme Court decided *Wolff* in 1974, and the Sixth Circuit decided *Knop* in 1992, *Lavado* in 1993 and *Kensu* in 1996. Therefore, these are all pre-September 11, 2001 decisions. Also, notwithstanding Magistrate Judge Carmody's recognition that *Sallier's* language was not limited and that *Sallier* is a post-September 11, 2001 decision (September 18, 2003) from the Sixth Circuit, defendant Eberly was confronted with a MDOC PD that did not require plaintiff's legal mail to be opened, albeit just for inspection, in his presence. Furthermore, the *Allah v. Brown*, 351 F. Supp. 2d 278 (D.N.J. Oct. 26, 2004) decision is from another circuit.[26] Finally, Magistrate Judge Carmody's report and recommendation (February 7,

---

[26]"In inquiring whether a constitutional right is clearly established, we must 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.'" *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (citing *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir.1991)). "[I]t is only in

2005) and Judge Enslen's order adopting the report and recommendation (April 15, 2005) in *Mallory-Bey* post-date the filing of the instant complaint.

As defendants argue, "[b]ased on the authority of the revised MDOC mail policy, which had been judicially approved, [d]efendant Eberly cannot be deemed to have known that complying with that policy was unlawful."  Mtn. Br. at 13 (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("[t]he relevant, dispositve inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")).  Because a reasonable official could believe that the Legal Mail Policy was constitutionally permissible under *Turner*, defendant Eberly is entitled to qualified immunity from monetary damages in this case.

**9.     Plaintiff's request for injunctive relief is moot.**

Plaintiff seeks, in part, injunctive relief "precluding [defendants] from continuing in such violative acts and actions in the future[.]"  Compl. at 11 ¶ B.  Defendants claim that "[p]laintiff's claim for injunctive relief is moot, because he has been paroled."  Mtn Br. at 11.

Plaintiff was paroled on November 18, 2004.[27]  Therefore, plaintiff's request for an order regarding further violations with regard to his legal mail is moot.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail.").[28]

---

extraordinary cases that we can look beyond Supreme Court and Sixth Circuit precedent to find 'clearly established law.'"  *Walton*, 995 F.2d at 1336.

[27]*See* www.michigan.gov/corrections, "Offender Search".

[28]Defendants request an assessment of costs and fees.  Mtn. at 2; *see also* Mtn. Br. at 14.  The request is premature.  Should the Court enter judgment in favor of defendants, they may present a bill of costs to the clerk of this Court pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1).

Furthermore, as previously noted, MDOC PD 05.03.5118 ¶ EE (June 6, 2005) now states: "Pursuant to a federal court order issued on April 15, 2005, incoming legal mail for a prisoner who has requested special handling of legal mail pursuant to Paragrah DD shall be opened and inspected for money, controlled substances and other physical contraband in the prisoner's presence."

## III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS:</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers*, *AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 8/4/05

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 4, 2005.

s/Eddrey Butts
Case Manager